# Case No. 76.

## In re ADDISON.

[3 Hughes, 430.][1]

District Court, E. D. Virginia.    April Term, 1874.

DISTRICT COURT—JURISDICTION IN BANKRUPTCY—LIQUIDATION OF LIENS — DISCRETION OF COURT—POWER OF REGISTER.

1. The bankrupt court has exclusive jurisdiction to liquidate the liens upon a bankrupt's real estate; but whether it will exercise this jurisdiction in any case is a matter for its own discretion, and this discretion must be exercised by the court itself, and cannot be delegated to or assumed by the register.

2. It is irregular to undertake to sell real estate free from incumbrances until all liens and their priorities are fully ascertained.

In bankruptcy. The case as shown by the record is as follows: John Addison, Jr., the present bankrupt, by the partition of his father's real estate, became the owner of a tract of land situated in Northampton county, Virginia. Under the decree of partition liens were retained for owelty of partition in favor of the estate of Edward V. Addison for $895, Bettie E. Fisher for $198.33⅓, and William R. Fisher for $420, upon the tract called Grapeland, which was assigned and set apart to him. In January, 1866, the said Addison conveyed to Mrs. E. A. Turner, by mortgage deed, this tract of land, subject to the aforesaid liens for owelty of partition, to secure a loan of $4530.86, with interest thereon at the rate of six per centum per annum. In 1872 Mrs. Turner brought her suit on the chancery side of the circuit court of Northampton county for a foreclosure of her mortgage and a sale of the mortgaged premises. In 1873, before a sale could be had under decree of the state court, Addison took the benefit of the bankrupt act, and thereupon all proceedings in the suit instituted in the state court were suspended. Edward D. Pitts, one of the petitioners, was appointed assignee of said bankrupt, and upon his petition an order of sale of the said tract of land was made by the district court of the United States at Norfolk. In August, 1873, the land was sold by the said assignee and purchased by Mrs. Turner at the price of $5500. The sale was reported by the assignee to the register and approved by him, and he proceeded to ascertain the liens and their priorities upon the fund, in the hands of the assignee,

[1][Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

arising from the sale. Upon the coming in of the register's report, ascertaining the liens and their priorities upon the said fund, Mrs. Turner excepted to the same upon the following grounds: 1st. Because out of the fund arising from the mortgaged subject, E. P. Pitts, a creditor, was allowed the sum of $125.90, with interest, and the said sum given priority over her debt secured by mortgage. 2d. Because John Addison, Jr., the bankrupt, was allowed $525.39 with interest, out of the said fund, and the said sum given priority over her debt secured as aforesaid; and 3d. Because T. C. Walston, assignee in bankruptcy of John Addison, Sr., was allowed the sum of $184.77, with interest, out of the sale of the land on which she held a mortgage. The court sustained each and all of these exceptions, and directed the assignee to pay: 1st. The liens for owelty of partition; and, 2d. The balance of the money in his hands from the sale of the said tract of land over to Mrs. E. A. Turner. E. D. Pitts, the assignee in bankruptcy, and Walston, assignee in bankruptcy of John Addison, Sr., did not ask the action of the court below to be reviewed. But E. P. Pitts, the creditor, petitioned for a review. The claim of this petitioner was a judgment obtained in the circuit court of Northampton county in November, 1872, by John Addison, Jr. (now bankrupt), against W. R. Fisher, and assigned by Addison before his bankruptcy to E. P. Pitts. At the time of the assignment of this judgment by Addison to Pitts, Addison was largely more indebted to Fisher than the amount of the judgment recovered against Fisher and assigned to Pitts. Upon this judgment thus assigned, Pitts caused an execution of fieri facias to issue against the goods and chattels of Fisher. Fisher enjoined in the state court the collection of this judgment for $125.90, and upon a hearing of the case the injunction was perpetuated and the judgment of $125.90 was, by the decree of the said circuit court, directed to be applied as a payment pro tanto upon the amount due Fisher by Addison, as an equitable set-off. See Wayland v. Tucker, 4 Grat. 267. That court held that Pitts was substituted to the rights of Addison by the assignment of the judgment, and took the judgment subject to be set off against Fisher's unsatisfied lien for owelty of partition, and to be extinguished by that lien. It was so ordered by a decree of a court of competent jurisdiction, and the subject was res adjudicata. But the register in bankruptcy overruled this adjudication of the circuit court, and allowed this judgment, which had been thus satisfied, priority over Mrs. Turner's debt, and directed the assignee to pay it a second time out of the money in the custody of the court. Upon exception, the district court reversed the register.

Upon this ruling of the district court, E. P. Pitts, the creditor, appealed to the supervisory jurisdiction of the circuit court, which affirmed the decree of the district court.

The following was the decision of the district court, rendered by HUGHES, District Judge:

This bankrupt's farm, in Northampton county, worth some $6000, was incumbered by undisputed owelty and mortgage liens to the amount of about $9000. The register, B. B. Foster, ordered the land to be sold free of incumbrances, before any previous ascertainment of liens and their priorities. The sale was made by the assignee, E. D. Pitts, and duly reported. The register confirmed the sale. The register then drew up a report of the liens upon the land, and of their priorities. Exceptions were taken to this report by the mortgagee and principal lienor, Mrs. Elizabeth A. Turner. On these exceptions the case comes for the first time before this court since the order of reference. These proceedings seem to require an announcement of the principles which will govern the court in dealing with real estate incumbered by liens equal to, or exceeding its value, where the probability is small of the bankrupt's estate having any interest in a surplus, or equity of redemption.

Since Judge Story's decision in the Case of Christy, reported in 3 How. [44 U. S.] 292, the very language of which is embodied in the jurisdictional clauses of the general bankrupt act of 1867, no doubt has been entertained of the power of a bankruptcy court of the United States to control the entire estate of the bankrupt, both contingent and actual, whether it be not or be the subject of litigation in other courts, and in whatever stage of litigation. Whether, therefore, a bankrupt court will exercise its jurisdiction over such part of the bankrupt's estate as may be the subject of litigation in other courts, or be covered by liens equal to or exceeding its value is not a question of power and right, but only of discretion.

For obvious reasons the bankrupt court must reserve to itself, in every case, the decision of the question whether or not it will exercise this discretion. And, therefore, no assignee of a bankrupt can have power to sell real estate, which is subject to liens, free of incumbrances, without a special order of court. The register has no power to confer such authority. It can come only from the court itself. The exercise of this authority involves considerations of great delicacy, inasmuch as it often produces a conflict of jurisdiction with other courts. The idea is not to be tolerated that any but the court itself may assume to exercise a discretion so important and so responsible. This discretion, reposed by law in the bankrupt court, cannot be delegated by it, either by general rule or special order, to either the assignee or the register; much less can the discretion be assumed by either of those officers. Rule 38, of the series of rules adopted by this court on the 21st day of September, 1869, cannot logically, and must not in fact be construed to delegate such a discretion; nor does the

order (form No. 4) of reference to the register intrust to that officer the exercise of such a discretion.

In the exercise, itself, of this often delicate discretion, this court will not interfere with trustees or local courts in their proceedings to subject real estate to unquestioned liens, where there is little probability of a surplus or of an equity of redemption resulting to the bankrupt's estate; but the court will content itself with requiring the assignee to become party to suits or to trustee's sales. Where there is nothing to be sold that is likely to be available to the assignee, any action of this court for the liquidation and settlement of such liens and for the sale of property subject to them, would cause a useless expense both to the lienors and the bankrupt's estate, producing nothing. Interference of this unavailing character, besides being futile of any good to the bankrupt's estate, would unnecessarily take away from the persons really interested in the land the right of having their liens adjudicated by the courts of the counties where they reside and where the property subject to the lien lies— a right which is not lightly to be disregarded.

I am, therefore, free to say, that if this matter of the Grapeland farm, or John Addison, Jr., bankrupt, had come before me in its inception, I should not have interfered with the proceedings of the circuit court of Northampton county, looking to a foreclosure of the mortgage of Mrs. E. A. Turner, and to a settlement and discharge of the owelty and mortgage liens resting upon that farm, it being confessedly worth less than $6000, and those liens amounting to $9000. There was plainly no possibility of a resulting surplus or equity of redemption to the bankrupt's estate; no possibility of any tangible interest having passed, under the operation of the 14th section of the bankrupt law, to the assignee. But finding the case here, as I do, under these circumstances, and those who would have a right to complain of its having been brought here being willing now to acquiesce in the action of this court, I will give to the matters before me such adjudication as seems proper.

I am to pass upon the exceptions which have been taken by the mortgage creditor, Mrs. E. A. Turner, to the report and orders of the register of the 11th and 14th of October, 1873.

1st. Her first exception is to the register's allowance of the claim of $125.90 to E. P. Pitts in the form of a judgment in favor of John Addison, Jr. (now bankrupt), v. W. R. Fisher, one of the owelty lienors, which was assigned to Pitts before the bankruptcy. It is conceded that as against Fisher this judgment is extinguished, it having been subject to the right of set-off which Fisher had against Addison for an owelty lien of $420 on the Grapeland farm; a court of competent jurisdiction having decreed that it should be applied as a credit upon that owel-

ty debt due Fisher. This decree of the local court was rendered on the principle that the equity of Fisher was superior to that of Pitts. But it is claimed that Pitts was substituted somehow to the rights of Fisher, and stands in Fisher's shoes as a lienor, to the extent of his judgment, against Addison's land, which he had mortgaged to this exceptant. It is not shown how this substitution has taken place. Pitts has no other rights than Addison himself could have had if the judgment had not been assigned. By the transfer he was simply substituted to the rights of Addison. He took the judgment subject to its liability to be set off against Fisher's owelty claim, and to be annulled and extinguished as a part of that lien. It was thus annulled by decree of the local court. As a lien it is res adjudicata. Pitts's recourse is against Addison, or his estate, of which he is only a general creditor. His equity is for compensation out of that estate. Mrs. Turner's equity as to her debt is for payment out of the estate generally, and out of the mortgage subject especially, after the unpaid owelty liens have been paid. Pitts is only a general creditor. Mrs. Turner is a general and a lien creditor, and her equity is superior to that of Pitts. The exception to this allowance out of the mortgage fund must therefore be sustained, and the allowance disapproved.

2d. This mortgagee's second exception must be sustained upon a somewhat similar ground. The bankrupt, John Addison, Jr., was a devisee of Joseph W. Addison before the partition which gave Grapeland to John in his own right and as Joseph's devisee, subject to owelty liens, and also, as to Joseph's interest, subject to the general debts of this devisor. Shortly after the partition, and after coming into possession of Grapeland, he mortgaged the farm for a debt to Mrs. Turner, conveying all his right, title, and interest, individually and as devisee, to her with general warranty. By transactions which need not be recited, John Addison, Jr., himself, afterwards and before his bankruptcy, became the holder of a debt against Joseph's estate, for which the register now allows him $525.39. This debt was also allowed on some undefined doctrine of substitution. By taking in this debt of Joseph Addison and becoming himself its owner, John's mortgage deed became operative against it in his own hands. Mrs. Turner's equity against it as his property, under his own mortgage deed, is certainly superior to any equity he may have against her; and the register's allowance of this $525.39 to Addison, as an exemption, cannot be approved.

3d. The mortgagee's third exception is to the register's allowance of $184.77 to Thomas C. Walston, assignee in bankruptcy of John Addison, Senior's, estate, as a general creditor of Joseph Addison, deceased, devisor of John Addison, Jr. As a claim in prejudice of Mrs. Turner's mortgage lien, the allow-

ance cannot stand. John Addison, Jr., took Joseph's interest in Grapeland as devisee as early as the fall of 1865; and he mortgaged his whole interest to Mrs. Turner in 1866 by recorded deed. As late as November 4th, 1873, the clerk of the county and circuit courts of Northampton county certified that there had been no qualification on the estate of Joseph Addison, deceased, and no fiduciary accounts; that no classified account of debts was ever returned to the clerk's office of either of the courts, and that no suits were brought or were pending in said courts for the settlement of the estate. The bona fides of the mortgage deed is not questioned, and section 5, c. 127, p. 934, of the Code of Virginia, provided that the bona fide conveyance by a devisee of real estate shall be good against creditors of the estate in cases where, at the time of such conveyance, no suit shall have been commenced for the administration of assets, nor any reports have been filed of the debts and demands of those entitled. The representative of Addison, Senior, therefore, claiming upon a debt of the deceased devisor, chargeable against his devisee, cannot make good his claim against the mortgagee of Grapeland, an innocent purchaser, without notice, and he ranks only as a general creditor of this bankrupt. The allowance to Walston is disapproved.